IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DUSTIN WAYNE NALL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-694-O |
| | § | |
| LORIE DAVIS, Director,[1] | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Dustin Wayne Nall, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. BACKGROUND

Petitioner was charged in Tarrant County, Texas, Case No. 1078788D, with capital murder. Adm. R., Clerk's R., vol. 1, 2, ECF No. 15-1. The state appellate court summarized the background of the case as follows:

> Appellant was charged with capital murder of Bertha Wilkerson through an indictment that alleged he intentionally caused her death by cutting or stabbing her with a knife while committing or attempting to commit robbery of the victim. A second paragraph charged he committed the same act while committing or attempting to commit burglary of her habitation. The indictment also included a deadly weapon

[1]Effective May 4, 2016, Lorie Davis replaced Williams Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

finding notice and a habitual offender notice. Appellant plead not guilty and went to trial before a jury.

Evidence at trial showed that during the early morning hours of August 4, 2007, the 25-year-old appellant stabbed and killed his uncle, and slashed his girlfriend's throat. These attacks occurred at a motel. Some three hours later, and some two miles away, appellant appeared at the townhouse of Mrs. Wilkerson, his girlfriend's neighbor. There, outside Mrs. Wilkerson's front door, at about 6:30 on that morning, appellant stabbed the 68-year-old woman to death. Appellant entered her townhouse, encountered and threatened her grandson, and took Mrs. Wilkerson's prescription pain medication and keys as he left the home. He was later apprehended in a nearby park. There, officers found a knife, six prescription bottles and Mrs. Wilkerson's keys. Both appellant's uncle's blood and Mrs. Wilkerson's blood was on the knife.

Mrs. Wilkerson's daughter testified appellant had been inside Mrs. Wilkerson's home two to three weeks before her murder. On that occasion, he approached Mrs. Wilkerson in her driveway, asking her to drive him somewhere. Mrs. Wilkerson told appellant she was taking pain medication but agreed to do so. Mrs. Wilkerson went inside her home to wait for appellant and his girlfriend to get ready. During that time, appellant knocked on her door three times, asking for a drink of water. Each time, she allowed appellant into her kitchen. Mrs. Wilkerson's medications were in plain sight on the end of the table in the dining room.

Appellant did not dispute his responsibility for the deaths of his uncle or Mrs. Wilkerson, or the injuries to his girlfriend. He challenged the evidence indicating the killing of Mrs. Wilkerson was intentional.

Mrs. Wilkerson suffered six stab wounds to the chest, abdomen, neck and the back of her arm near her shoulder. The medical examiner testified the wounds ranged from two to five inches in depth. The wound to the back of her arm was the fatal wound, was five inches in depth, and inflicted with such significant force that the knife was "driven . . . up to the handle." An artery was severed, causing her to bleed to death. She also had eight defensive wounds. The record describes appellant as about six feet tall, and Mrs. Wilkerson as about five-and-a-half feet tall and obese.

The stab wounds to Mrs. Wilkerson were similar to those inflicted on appellant's uncle, being in "approximately" the same areas of the body and of similar depths.

Appellant asked that the charge authorize the jury to convict him of the lesser-included offense of felony murder. The trial court denied his request, giving the jury the choice of finding him not guilty, or guilty of capital murder. The jury found

appellant guilty of capital murder, leading to the automatic life sentence.

*Id.,* Mem. Op. 1-3, ECF No. 16-3 (footnote omitted).

On direct appeal, the appellate court affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. *Id.* at 8 & Mandate, ECF No. 16-2. Petitioner also filed a state habeas application challenging his conviction, and raising the claims presented in this federal petition, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. *Id.*, WR-81,713-01 7-8, ECF No. 18-5 & Action Taken, ECF No. 18-6.

## II. ISSUES

In two grounds, Petitioner claims he received ineffective assistance of trial and appellate counsel. Pet. 6, ECF No. 6.[2]

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither barred by the statute of limitations nor successive and that the claims have been exhausted in state court. Resp't's Ans. 5, ECF No. 13.

## IV. DISCUSSION

### A. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the

[2]The pagination in the ECF header is used.

state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as in this case, it is an adjudication on the merits, which is also entitled to the presumption of correctness. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[3]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

**B. Ineffective Assistance of Counsel**

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

(1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. The Supreme Court recently emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000) (emphasis in original)). Accordingly, it is necessary only to determine whether the state courts' adjudication of Petitioner's

ineffective assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner was represented by Joetta Keene and Robert Ford at trial. Petitioner claims counsel were ineffective by–

(A) conceding Petitioner's guilt to felony murder;
(B) relying on a prejudicial defense strategy;
(C) introducing prejudicial extraneous offenses as a defense strategy;
(D) failing to request a lesser included offense instruction on murder;
(E) failing to explain the "intent" element of capital murder causing "Petitioner to rely on counsel's advice to concede guilt of felony murder and waive closing argument"; and
(F) waiving closing argument.

Pet. 6, 11, ECF No. 1.

In the state habeas proceedings, Keene, a former prosecutor who has been licensed since 1990 and who is board certified in criminal law, responded to Petitioner's claims by affidavit as follows (all spelling or grammatical errors are in the original):

> I represented Dustin Nall in the case that is the subject of this writ. Mr. Nall states that I provided him with ineffective assistance of counsel in six specific allegations. In order to understand my answers to his allegations it is first necessary to understand some background history on the case before the court.
>
> On August 7, 2007, I was appointed to represent Dustin Nall on a capital murder charge and an additional murder charge. The first time of many meeting that I had with Mr. Nall was on August 9, 2007. Robert Ford was appointed to assist me in defending Mr. Nall.
>
> On many occasions, myself and Mr. Ford talked to Mr. Nall about trial strategies. We discussed with him the argument for a lesser charge and the argument of offering into evidence the murder charge in the capital murder trial. Mr. Nall was in agreement with us doing this in his death penalty trial and in the second death penalty waiver trial.

Mr. Nall always told us that he was the person responsible for killing his uncle and for killing Ms. Wilkerson, the complainant on the capital case. The evidence also strongly supported his guilt of both charges. This was not a "who done it" case.

During the death penalty case we decided the only way to understand "why" Ms. Wilkerson was killed was to understand Mr. Nall's life story. His life story included presenting the murder case. Mr. Nall had a tumultuous upbringing. At the time of the murders, Mr. Nall was with a woman who was pregnant with his child. He was living in a motel room with this woman, his mother and her husband and his uncle. They were all abusing substances. Mr. Nall's relationship with his uncle was the spark that began the evening of violence. The uncle, intoxicated, told Mr. Nall that he had had sexual relations with Mr. Nall's pregnant girlfriend. This event, compounded on a life of abuse at the hands of the same uncle, lit the fire. Mr. Nall killed his uncle and he cut the throat of his girlfriend. He then ran behind the motel and watched as the police arrived.

Mr. Nall then proceeded on foot to Ms. Wilkerson's house. He used to be her neighbor. He knocked on her door and proceeded to stab her many many times to gain entry into her house. He ran through her house and gathered hydrocodone pills. Her teenage grandson awoke and confronted Mr. Nall with a shotgun. When Mr. Nall charged at the grandson, the grandson pulled the trigger to the shotgun. The safety was on and the trigger did not engage. Mr. Nall then turned and ran out of Ms. Wilkerson's house and to a park close by. He sat on a park bench until the police arrived and then he ran. A foot pursuit began and Mr. Nall threw the medicine bottles as he ran and the keys to Ms. Wilkerson's car. He was ultimately stopped and tazered by the police when he lunged towards the officer. The government had positive identifications of Mr. Nall and DNA evidence linking him to the crimes. The case appeared to be open and shut except for the issue of "intent".

After a thorough preparation, the case went to a jury trial and the Tarrant County District Attorney sought the death penalty. We began that trial picking a jury on September 17, 2009 and completed the trial on November 4, 2009. The jury was hung at the guilty stage of the trial. They could not decide if Mr. Nall was guilty of felony Murder or Capital Murder. The Judge in the death penalty trial allowed the lesser included offense of felony murder into the court's charge.

Mr. Nall now complains about the same trial strategies that saved his life. From the beginning of my representation of him it was our goal for him to live and not receive the death penalty. Since he killed both his uncle and Ms. Wilkerson, we focused on his intent in the killing of Ms. Wilkerson. Basically, was it [h]is specific intent to kill the elderly Ms. Wilkerson or was it his intent to get her out of the way so he could get inside her house and get his hands on the hydrocodone?

The death penalty case resulted in a hung jury because we introduced the murder charge. The Tarrant County District Attorney made a decision to waive the death penalty after many meeting with them. The best evidence we could present for the District Attorney to waive the death penalty was the fact that we had hung up a jury on the issue of intent. After waiving the death penalty, there were no further plea bargains and the only result was to try the case again to a jury. Since Mr. Nall's goal and ours was to save his life, in reality we accomplished this goal before we picked the second jury.

At the second trial we again used the same trial strategies that we had used in the death penalty trial: put the murder case into evidence and argue for the lesser charge of felony murder rather than capital murder. Mr. Nall was in agreement with this strategy as it had saved his life. We voir dired on the lesser charge of felony murder and argued the lesser charge in the opening statement of the case. However, in this trial, the trial judge decided NOT to put the lesser charge of murder into the court's charge. This left us with nothing to argue as we had argued that Mr. Nall was guilty of felony murder not capital murder in the opening. We discussed with Mr. Nall the various options that we could do at that time. Mr. Nall opted for the waiver of the final argument and decided to focus his appeal on the denial of the lesser charge in the court's charge.

Understanding that background, I will now address the specific assertions Mr. Nall alleges were ineffective assistance of trial counsel:

1. <u>Trial counsel conceded guilt of felony murder.</u> As stated above, this strategy was used two times in two trials. Mr Nall was made aware of the pros and cons of the strategy and was in full agreement to proceed as we did in both trials.

2. <u>Trial counsel relied on prejudicial defense strategy.</u> As stated above, this strategy was also used two times in two trials. Mr. Nall was made aware of the pros and cons of this strategy and was in full agreement to proceed as we did in both trials.

3. Trial counsel introduced prejudicial extraneous offenses as defense strategy. This is the same point as number two.

4. <u>Trial counsel failed to request a lesser-included offense of Murder.</u> Trial counsel requested and argued for the lesser included offense and was denied by the judge. This is not an accurate statement.

5. Trial counsel failed to explain "intent" element for capital murder conviction and caused applicant to rely on counsel's advise to concede guilt of felony

murder and waive closing argument. Mr. Nall, myself and Mr. Ford had numerous meetings in which we discussed the law and the evidence. Mr. Nall was fully explained the meaning of "intent" prior to the first trial and many times thereafter. Mr. Nall had the opportunity as well to sit through six weeks of voir dire on the death penalty case in which the Judge, the Assistant District Attorneys and the defense attorneys thoroughly explained the law of intent and all other relevant law in the case. Mr. Nall knew the chances that he was taking in opting for the defense strategy that was used.

6. Trial counsel incompetently waived closing arguments. Trial counsel relied on the first trial and the admission of the lesser charge in the first trial. Trial counsel explained to Mr. Nall the possible pitfalls of relying on this defense and on relying on the same strategy as the first trial. However, it was trial counsels' advice to Mr. Nall to continue on with this defense. Since we was infact guilty of stabbing Ms. Wilkerson 14 or so times causing her death and stealing medications from her home it was this defense (which had worked before) or the defense of arguing that he was not guilty of a crime that was overwhelmingly proved. We believe and Mr. Nall agreed that the lesser included offense defense was the best defense. When the trial court denied the lesser charge Mr. Nall agreed to waive the closing arguments and proceed on appeal with the case. As stated earlier, the objective from day one on this case was to save Mr. Nall's life. The objective was achieved when the hung jury happened and the death penalty was waived. It is also not true that we were surprised when the lesser was not allowed. All options had been fully weighed and examined by both trial lawyers and all options had been fully discussed with Mr. Nall. This was a calculated trial strategy – "stay the course of the first trial since it worked, but understand that we may not get the lesser charge the second time – take that risk."

Neither I nor Mr. Robert Ford provided ineffective assistance of counsel to Dustin Nall. Infact, his case is one that I am very proud of and am happy that we were able to save Mr. Nall's life. On a side note, Mr. Nall's life was saved three times: the grandson's shotgun was on safety when he leveled off to shoot him as Mr. Nall lunged towards him; the police officer chose to use a tazer rather than a hand gun when Mr. Nall lunged at him, and, finally, when the death penalty jury hung. I think that means that Dustin Nall has a purpose on this planet and he is suppose to live to fulfill it.

*Id.,* Aff. 102-04, ECF No. 18-5.

The state habeas judge, who also presided over the second trial, found counsel's affidavit credible and supported by the record and entered findings, too numerous to list, consistent with the

affidavit and the documentary record, which were later adopted by the Texas Court of Criminal Appeals. Relevant here, and based on the totality of counsel's representation, the state court found that, "felony murder" is "murder" under Texas law; that counsel's trial strategy to introduce the felony murder charge and rely on the defensive strategy of felony murder, which was successful in the first trial, was the result of reasonable trial strategy; that counsel's introduction of evidence that Petitioner committed other offenses to explain "why" the victim was killed and to show that Petitioner did not have the intent to commit robbery, but only felony murder, was the result of reasonable trial strategy; that counsel did request a lesser included offense instruction on felony murder; that counsel did advise Petitioner of the meaning of "intent" prior to both trials and explained the pros and cons of the chosen defensive strategy; that counsel's waiver of closing argument was the result of reasonable trial strategy; and that there was no evidence that the outcome of the trial would have been different but for counsel's alleged acts or omissions. *Id.* at 179-81. Based on its findings, and applying the *Strickland* standard, the court concluded that Petitioner failed to prove counsel's representation fell below an objective standard of reasonableness or a reasonable probability that, but for the acts or omissions of counsel, the result of his trial would have been different. *Id.* at 184-85.

Absent clear and convincing evidence in rebuttal, the Court defers to the state court's factual findings. Applying the appropriate deference and having independently reviewed Petitioner's claims in conjunction with the state court records, it appears that the Supreme Court has not specifically addressed one or more of the claims raised by Petitioner or that, where the Supreme Court has done so, the state court's application of *Strickland* was reasonable. Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, and/or involve strategic and

tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief.[4] Furthermore, even if Petitioner could demonstrate defective assistance based on one or more of his claims, he cannot make a showing of *Strickland* prejudice in light of the overwhelming evidence of his guilt. *Strickland,* 466 U.S. at 694-96. Petitioner is not entitled to relief under his first ground.

Petitioner was represented on appeal by Mike Berger. He claims appellate counsel was ineffective by failing to–

(A) challenge the sufficiency of the evidence;
(B) raise the issue of ineffective assistance of trial counsel;
(C) raise the issue that "the trial court abused its discretion by denying trial counsel's request for mistrial due to ineffective assistance of counsel"; and
(D) file a motion for new trial.

Pet. 6 & 11, ECF No. 1.

Berger, licensed to practice since 1987 and a solo practitioner of criminal and appellate law since 1992, responded to Petitioner's allegations by affidavit, as follows (all spelling or grammatical errors are in the original):

> 5. On or about September 9th, 2010, I reviewed the police report in the Tarrant County Electronic Case Filing System and I then teleconferenced with trial counsel Joetta Keene on September 14th, 2010. On September 17th, 2010 I visited for one and a half hours with the Defendant in the Tarrant County Jail, reviewing the facts of the case, and planning an appellate strategy.

---

[4] *See, e.g., Lopez v. Smith,* — U.S. —, 135 S. Ct. 1, 3 (2014) (providing absent a decision by the Supreme Court addressing "the specific question presented by a case" a federal court cannot reject a state court's assessment of claim); *Burt v. Titlow,* — U.S. —, 134 S. Ct. 10, 17 (2013) (noting the absence of evidence cannot overcome the presumption that counsel's conduct fell within wide range of reasonable professional assistance); *Allen v. Lawhorn,* 131 S. Ct. 562, 564 (2010) (providing counsel's decision that closing argument was unnecessary on an issue was reasonable trial strategy); *Gonzalez v. United States,* 553 U.S. 242, 249 (2008) (providing tactical decisions generally controlled by counsel include "the arguments to advance"); *Strickland,* 460 U.S. at 691 (providing strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on grounds of ineffective assistance of counsel); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

6. During my meeting with the Defendant he did not challenge or question the sufficiency of the evidence against him. Upon further review of the record, it became clear that there was a staggering amount of forensic and circumstantial evidence against the Defendant, all of which conclusively pointed to the fact that he had killed Ms. Wilkerson. The only question for the jury was the Defendant's intent when he went to the residence. The sufficiency of the overall evidence as to the felony murder was not in question. Only the motive and perhaps the timing of the events were left unclear, but the Defendant's writ appears to confuse the State's inability to provide an exact motive for the murder with some sort of impermissible "speculation". He affirms in the writ that he did not attack Ms. Wilkerson because he wanted her medications. Instead he describes the theft of the medications as an "after-thought", and if that is read literally, he states that the purpose of his visit to the home was to kill her without any linked reason or motive. I cannot ascertain when the Defendant's "after-thought" theory of the defense of the case was first concocted, but he made no mention of the "after-thought" during my visit in the jail or in any of his letters to me. I suspect that he tracked the language of a case I cited in my brief, *Tolbert v. State,* which stands for the notion that in some circumstances, a robbery committed after the underlying murder has already been completed is not capital murder.

The State's case, (consistent with the evidence of her body being found outside the house), argued for the theory that the Defendant went to the victim's house with the specific purpose to steal her medications and that she was killed when she surprised him either breaking into the house or when he tried to force his way inside. The brief I wrote challenged the trial court's decision not to offer the lesser included offense of felony murder in the jury charge based on the legal and factual distinctions between these offenses, but the case itself was never a matter of sufficiency of the evidence, only the circumstances of the murder as it related to the burglary of the house.

7. After my discussion with Ms. Keene and the review of the offense report, I concluded that the best legal issue in the case concerned the charge given to the jury in which the Court had refused the lesser included offense of felony murder, even though the same facts and witnesses had been presented to the jury in both trials. This was a sound strategy for both trial and appellate counsel, since it was a clear cut legal issue and the one most likely to draw critical review and a possible reversal.

8. I discussed this strategy with the Defendant and he agreed that it was an excellent approach to the appeal. I reiterated my intent to use this strategy again in my letter of December 15th, 2010. The Defendant thanked me for the "excellent job" I did on the brief in his letter of June 21st, 2012.

9. After I met with the Defendant in the Tarrant County Jail, I noted that his complaints regarding assistance of trial counsel was confined to two areas. The first was that his attorneys had not visited with him frequently enough, (a common refrain in most appointed cases), and that Ms Keene was "too friendly" with the prosecutors during breaks in the trial. I found neither of these arguments compelling enough to file a motion for new trial absent some evidence of unpreparedness or collusion. The trial attorneys' decision to pursue the exact same strategy based on a previous nine hour hung jury cannot be faulted, even if in hindsight the State blindsided them in persuading the trial court during the second trial to refuse a lesser-included charge. During our initial discussion, when I asked the Defendant why he had walked to the victim's residence at that early hour after stabbing his brother-in-law to death at the motel, he claimed he could not remember. Barring any other evidence, and not being privy to the confidential discussions of trial counsel, I did not see any indicator that his lawyers had blundered at trial or had concealed exculpatory information during the trial. Their strategy was coherent, logical and aimed at securing only a lesser-included charge which had worked well enough to hang the jury in the first trial.

10. The trial court's decision to refuse a mistrial based on the self-admitted ineffective assistance of counsel was not in my opinion, under any circumstances, an abuse of discretion. The appellate brief makes mention of it in a footnote, but it did not deserve a briefing point of error because it was more of an editorial commentary by trial counsel than a true admission of error and incompetency.

11. My decision to not file a motion for new trial was governed by two factors. One was that there were simply no actionable legal or factual grounds upon which a new trial could be filed. The only ground left was a motion for a new trial based on an ineffective assistance claim which would obviously have waived the attorney-client privilege. Since it was my opinion that the trial court's charging decision was potential reversible error, I did not want to foul up that potential winning point of error by allowing the Defendant's attorneys' to offer damaging privileged information to defend an ineffective assistance claim.

*Id.* at 107-10 (citations to the record and footnotes omitted).

In this instance too the state habeas court found counsel's affidavit credible and supported by the record and entered findings, too numerous to list, consistent with the affidavit and the documentary record, which were later adopted by the Texas Court of Criminal Appeals. *Id.* at 181-83. Relevant here, and based on the totality of counsel's representation, the state court found that, based on the totality of counsel's representation, counsel's decisions not to challenge the sufficiency

of the evidence, raise an ineffective-assistance of trial counsel issue, attack the trial court's decision to deny the motion for mistrial, and file a motion for new trial were the result of reasonable appellate strategy. *Id.* Based on its findings, and applying the *Strickland* standard, the court concluded that Petitioner failed to prove that his appellate counsel's representation fell below an objective standard of reasonableness or that there was a reasonable probability that, but for the alleged acts of misconduct, the result of his appeal would have been different. *Id.* at 185-87.

A federal habeas court defers to the state courts' determination of whether counsel's choice of issues was a strategic determination that is not to be second-guessed. *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)) (internal quotations omitted). Applying the appropriate deference and having independently reviewed Petitioner's claims in conjunction with the state court records, it appears that the state court's application of *Strickland* was reasonable. Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 288 (2000). Counsel articulated the reasons for declining to raise the issues asserted and had reasonable justification for doing so. Petitioner is not entitled to relief under his second ground.

**V. CONCLUSION**

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. A certificate of appealability is **DENIED**.

**SO ORDERED** on this 8th day of July, 2016.

Reed O'Connor
UNITED STATES DISTRICT JUDGE